UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**WILLIAM DOMENECH**<br><br>Defendant. | Crim. Action No. 14-183 (JDB/GMH) |

## MEMORANDUM OPINION

Before the Court is [47] Magistrate Judge Harvey's Report and Recommendation concerning defendant's alleged violations of his conditions of supervised release, [48] defendant's objections to the Report and Recommendation, and [49] the government's response. For the reasons set forth in the Report and Recommendation and those stated below, the Court finds that defendant violated the terms of his supervised release. The Court accordingly adopts in full the Report and Recommendation, revokes defendant's supervised release, and sentences defendant to thirty months of incarceration.

### I.   BACKGROUND

The Court will briefly summarize the key facts, which are described more fully in the Report and Recommendation. See R&R [ECF No. 47] at 1–7. In August 2014, defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine on board an aircraft registered in the United States. He was sentenced to time served, approximately 39 months. Am. Judgment [ECF No. 29] at 2. His sentence included a three-year term of supervised release. Id. at 3.

1

Defendant's supervised release commenced on June 24, 2016, under the supervision of the U.S. Probation Office for the Middle District of Florida, where defendant resided with his wife, Amparo Pérez ("Pérez"). Less than three months later, the Probation Office filed a Probation Petition alerting the Court that the Probation Office received a call from Pérez stating that she was receiving medical treatment for injuries sustained when defendant attacked her with a pot of boiling water while she was in bed sleeping. See Sept. 16, 2016, Probation Petition [ECF No. 31] at 4. The Petition also noted that the defendant's whereabouts were unknown and alleged that he had changed his residence without authorization. See id. at 1–2. On September 16, 2016, this Court issued an arrest warrant for defendant based on the alleged battery of Pérez. See Supervised Release Warrant [ECF No. 34]. The same day, the State of Florida issued an arrest warrant charging defendant with Aggravated Battery.[1] See Gov't Ex. 16. Defendant was arrested four days later in Puerto Rico.

Thereafter, the Probation Office filed second and third Probation Petitions, alleging that defendant committed Aggravated Battery under Florida law, see Oct. 25, 2016, Probation Petition [ECF No. 33] at 2, and that he left the Middle District of Florida and traveled to Puerto Rico without permission, see Dec. 8, 2016, Probation Petition [ECF No. 36] at 2.

The Court referred this case to Magistrate Judge Harvey for a preliminary revocation hearing. See Nov. 1, 2016, Minute Order. The government represented that it did not intend to pursue the first alleged violation, i.e., that defendant changed his residence without authorization, and defendant conceded the third violation, i.e., that he left the judicial district without permission. Thus, the primary issue was whether defendant committed aggravated battery against Pérez. If so,

---

[1] This charge was later dismissed by the State, purportedly because Pérez refused to cooperate with prosecutors. Notwithstanding the dismissal, the government has elected to pursue the alleged battery as a violation of defendant's supervised release. See R&R at 3.

2

that is a violation of the following condition of his supervised release: "[t]he defendant shall not commit another federal, state, or local crime." Am. Judgment at 3.

In a series of hearings during December 2016 and January 2017, the Court considered documentary evidence; testimony from the Orange County Sheriff's Office, a defense investigator, and defendant's probation officer; photographs of the scene and Pérez's injuries; and Pérez's out-of-court statements about the alleged battery. See R&R at 2–18. Pérez's statements established two competing narratives. Initially, she provided several statements contemporaneous with the alleged battery—including a 911 call, a sworn statement to police, and statements to defendant's probation officer and mental health provider—describing defendant attacking her with boiling water in the bedroom. Months later, Pérez made two recanting statements—a November 10, 2016, sworn statement and a December 20, 2016 unsworn statement to a defense investigator—in which she attributed her injuries to a self-inflicted kitchen accident. The government ultimately subpoenaed Pérez to testify at the hearing held on January 26, 2017, but she invoked her Fifth Amendment right to remain silent because her inconsistent statements exposed her to prosecution in federal court for perjury and in Florida under a state statute penalizing knowingly giving false information to law enforcement. Defendant has argued that the government was obligated to provide immunity to Pérez and that if the government had done so, she would have been available for cross-examination by defendant. The government objects to this argument for reasons described more fully below.

Magistrate Judge Harvey issued a Report and Recommendation finding defendant committed aggravated battery against Pérez, and recommending revocation of defendant's supervised release and a period of incarceration of not less than 30 months. See id. at 26–27.

Defendant thereafter filed a brief stating two objections.[2] See Def.'s Objections to R&R [ECF No. 48]. First, he generally objected that "[t]here is insufficient evidence to establish that [defendant] assaulted his wife." Id. at 5. Second, defendant "strenuously disagree[d] with the Magistrate Judge's finding that 'Defendant has not demonstrated that prejudice resulted from his inability to cross-examine Pérez.'" Id. at 8. The government responded, urging the Court to reject these objections and adopt the Report and Recommendation. Gov't's Response to R&R [ECF No. 49] at 1.

## II.   LEGAL STANDARD

Revocation of supervised release requires the government to prove by a preponderance of the evidence that the defendant has violated one or more of the conditions of his supervised release. 18 U.S.C. § 3583(e)(3). The "preponderance of the evidence" standard requires only that the trier of fact "believe that the existence of a fact is more probable than its nonexistence." Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 622 (1993) (internal quotation marks omitted).

Once a magistrate judge issues a report and recommendation, any party may file written objections within fourteen days. L. Crim. R. 59.2(b). Importantly, "[t]he objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for the objection." Id. The district judge "shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made." L. Crim. R. 59.2(c). However, "when a party makes conclusory or general objections . . . the Court reviews the Report and Recommendation only for clear error." M.O. v. District of

---

[2] At an April 10, 2017, hearing, defendant further objected to Magistrate Judge Harvey's interpretation of the photographic evidence. The Court addresses this objection in its discussion of the insufficient evidence objection below. See infra III.A.

4

Columbia, 20 F. Supp. 3d 31, 37 (D.D.C. 2013) (internal quotation marks omitted); see also Powell v. Dep't of Justice, 1991 WL 119598 (D.C. Cir. June 28, 1991) (per curiam) (nonprecedential) ("[F]ailure to file specific objections to the magistrate's report obliged the district court to review the report only for clear error."). "A district judge may make a determination based solely on the record developed before the magistrate judge, or may conduct a new hearing, receive further evidence, and recall witnesses." L. Crim. R. 59.2(c). A district judge may accept, reject, or modify the findings and recommendations of the magistrate judge. Id.

### III. DISCUSSION

As noted above, defendant objects to the sufficiency of the evidence of the aggravated battery charge and argues that he was prejudiced by his inability to cross-examine Pérez. The Court addresses each objection in turn.

*A. Insufficient Evidence*

Defendant first argues that there was insufficient evidence to find that he assaulted Pérez.[3] The Court disagrees. The Court finds that Pérez's initial statements tell a credible and consistent story that defendant assaulted Pérez. The Court agrees with Magistrate Judge Harvey that the 911 call is the "most compelling" statement because it occurred within five minutes of the assault, when Pérez did not have the time nor was she in condition to fabricate a story. See R&R at 18–19. During the 911 call, Pérez sounds clearly distressed, concerned about her safety, and in need of medical attention. See Gov't Ex. 11. When asked to describe what happened, Pérez stated without hesitation that defendant threw boiling water on her face. See id. She told the dispatcher that she was hiding inside her locked bedroom, where she said that the attack occurred. Id.

---

[3] Although this is stated as a general objection which the Court could review for clear error, see M.O., 20 F. Supp. 3d at 37, the Court has nevertheless completed a de novo review of the entire record in analyzing this objection.

5

Considering the surrounding circumstances, the Court finds Pérez's statements on the 911 call to be particularly reliable.

About one hour after making the 911 call, Pérez provided a sworn statement to an investigator from the Orange County Sheriff's Office. See Gov't Ex. 13. The more detailed allegations in Pérez's sworn statement are consistent with the 911 call: she reported that she was sleeping in bed at approximately 4:00 a.m., was awoken by the feeling of someone pulling the blanket away from her face, and immediately felt boiling water make contact with her face and arms. Id. She jumped up screaming and observed defendant standing in the bedroom with his back towards her. Id. Defendant's earlier statements from the 911 call are even more reliable because they are corroborated by this later statement; and this statement itself is reliable because it was sworn before a law enforcement officer. See Crawford v. Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003). Moreover, both the 911 call and the sworn statement are consistent with additional statements that Pérez made to defendant's probation officer and mental health provider in the days following. In each account, Pérez consistently stated that defendant attacked her by pouring boiling water on her. See Gov't Ex. 21 at 2. Pérez also offered an explanation about defendant's motive for the attack, explaining that on the night of the incident she had asked defendant for a divorce and he responded by threatening to kill her. Id. at 3.

The Court is unconvinced by defendant's argument that it should ignore Pérez's initial statements in favor of the two recanting statements made by Pérez months later. Unlike Pérez's initial statements, her later statements are materially inconsistent. In her November 10 affidavit, Pérez averred that, "[o]n September 14, 2016, at 4:00 a.m., [she] was in the kitchen of [her] residence holding a hot pot with boiling water" when she "stumbled and fell to the floor burning [her] hands and part of [her] face with the hot water." Def. Ex. 5. But on December 20, Pérez told

6

a different story to a defense investigator. In this version, Pérez described arguing with defendant for several days based on her suspicion that defendant was having an inappropriate relationship with an unidentified woman. See Def. Ex. 4 at 2. Pérez alleged that shortly before midnight on September 13, defendant received a call from the woman, which led to another argument before Pérez went to bed. Id. According to Pérez, defendant got up a few hours later at 3:00 a.m. on September 14 to get ready for work and she got up around 3:30 a.m. to cook spaghetti. Id. at 2–3. She allegedly became furious when defendant left the house and ignored her request for an explanation about the woman. Id. at 3. In her fury, Pérez says she accidentally bumped the corner of the stove with the pot, splashing boiling water on her neck, face, and arms. Then, she allegedly carried the boiling pot to the bedroom and threw water on the bed and wall in an attempt to frame defendant. Id.

In the first version Pérez falls; there is no interaction with defendant including no arguments about the unidentified woman; and she does not attempt to frame defendant. In the second version, there are ongoing arguments about defendant's relationship with the unidentified woman; Pérez bumps the stove but does not fall; and she attempts to frame defendant. These discrepancies alone lead the Court to conclude that Pérez's recanting statements lack credibility.

In addition, the Court agrees with Magistrate Judge Harvey's determination that these statements tell an unbelievable story. See R&R at 21. According to Pérez, she was awake around midnight the morning of September 14 arguing with defendant. Why would she then wake up just a few hours later to cook spaghetti (of all things) at 3:30 a.m.? And, if she was cooking spaghetti, the Court would expect that investigators would have found spaghetti in the bedroom where Pérez supposedly poured water to frame defendant. But none was found. Moreover, given the extent

and severity of the burns on Pérez's body and her accompanying pain,[4] the Court finds it far-fetched that she would have the fortitude to walk to the bedroom with the boiling pot and throw water on the bed and the wall to frame defendant. As Magistrate Judge Harvey observed, it seems more plausible that Pérez added this detail to her December 20 story to explain the water stains that investigators found in the bedroom, revealed for the first time in discovery produced to defense counsel in early December.[5] Id.

More importantly, the Court has analyzed the physical evidence and finds that it corroborates Pérez's initial version of events and does not support her recanting statements. The photographs of Pérez show burns to her face, scalp, right ear, neck, upper back, right shoulder, both arms and hands, and upper right thigh. See Gov't Ex. 23. It is hard to believe that such extensive and widely dispersed burns were the result of bumping a pot while walking. The extent and dispersion of these burns on Pérez's body is more likely the result of defendant pouring boiling water on Pérez while she was sleeping than of either of the two accidents that Pérez described in her later statements. The Court also agrees with Magistrate Judge Harvey's interpretation of Pérez's burn pattern as "consistent with scalding water being poured on her face from above and dragged down her neck by gravity." R&R at 22.

Finally, the Court finds additional evidence that defendant committed aggravated battery based on his conduct. On September 14, defendant abruptly drove to Miami and fled to Puerto Rico shortly thereafter. See Gov't Ex. 21 at 2. He fled, without providing any care to Pérez, despite telling his mental health provider on September 14 that Pérez needed to be taken to the hospital. Id. Following the incident, defendant declined to provide his specific whereabouts to his

---

[4] When the investigator first encountered Pérez, he observed that she was crying, complaining of pain, and she reported that her skin was burning. See Gov't Ex. 12 at 1.

[5] The Court also agrees that there are certain details in Pérez's later statements that seem "oddly gratuitous" and give the appearance that the statements may have been concocted to assist defendant. See R&R at 21.

probation officer. Id. On September 18, defendant called his probation officer crying and told her that he was contemplating suicide. Id. He also attempted to justify his behavior toward Pérez by demeaning her. Id. The Court views defendant's immediate flight, coupled with his statements and apparent mental state, as demonstrating a consciousness of guilt.

Considering the entire record, the Court is convinced that there is sufficient evidence to find, by a preponderance of the evidence, that defendant committed aggravated battery.

### B. Prejudice From Pérez's Unavailability for Cross-Examination

Defendant next objects to the Magistrate Judge's finding that he has not shown prejudice resulting from his inability to cross-examine Pérez. See Objections to R&R at 8. The Court again disagrees with defendant's objection.

Supervised release revocation hearings are not criminal trials and defendants are generally afforded more limited rights than criminal defendants. See Morrissey v. Brewer, 408 U.S. 471, 489 (1972). Thus, neither the Federal Rules of Evidence nor the Sixth Amendment's Confrontation Clause strictly apply to revocation hearings. Fed. R. Evid. 1101(d)(3); Ash v. Reilly, 431 F.3d 826, 829–30 (D.C. Cir. 2005); see also United States v. Carthen, 681 F.3d 94, 100 (2d Cir. 2012). However, under Federal Rule of Criminal Procedure 32.1, a defendant in a revocation hearing has the right to "question any adverse witness, unless the judge determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(1)(B)(iii). This right is not grounded in the Sixth Amendment, but is a more attenuated right flowing from the Due Process Clause. See Morrissey, 408 U.S. at 489; Ash, 431 F.3d at 830. When a defendant asserts Rule 32.1(b)(1)(B)(iii)'s cross-examination right, a court should apply a balancing test before admitting the hearsay evidence, "weighing [the releasee's] right to confront the declarant against the government's asserted grounds for foregoing confrontation." United States v.

Stanfield, 360 F.3d 1346, 1359 (D.C. Cir. 2004). Courts generally analyze whether the government has asserted "good cause for not allowing confrontation." Morrissey, 408 U.S. at 489.

In this Circuit, even if the government does not demonstrate good cause, a defendant is not entitled to a new revocation hearing unless he shows "prejudice from his inability to cross-examine the missing witness." Ash, 431 F.3d at 830 (citing Jackson, 323 F.3d at 131). Whether a witness's absence is prejudicial depends on "the quality and quantity of nonhearsay and reliable hearsay evidence supporting the decision to revoke." Id. Ultimately, a defendant's due process right is only violated when "the hearsay relied upon is both unreliable and sufficiently important to the decision such that the [releasee] is prejudiced by the lack of confrontation." Ash v. Reilly, 433 F. Supp. 2d 37, 43 n.3 (D.D.C. 2006).

As an initial matter, the Court agrees with Magistrate Judge Harvey's finding that Pérez's proper invocation of her Fifth Amendment right at the hearing satisfies the good cause requirement. See R&R at 14 (citing United States v. Elizondo, 502 F. App'x 369, 372 (5th Cir. 2012)). Defendant provides no authority to support his argument that it was improper—and showed a lack of good cause—for the government to refuse to grant Pérez immunity. See Objections to R&R at 8–9. In any case, defendant is wrong that the government could have made Pérez available for cross-examination because even if she were given federal immunity, Pérez would have maintained her Fifth Amendment right and remained unavailable based on the jeopardy she faced under the Florida state statute criminalizing false reporting of charges. Federal authorities could not immunize her from that state jeopardy.

But even assuming arguendo that good cause was lacking, defendant has not shown that he suffered prejudice. The Court agrees that Pérez's testimony would not have enriched the record because, at best, it would have been consistent with statements that were already part of the record

and considered by the Court. See R&R at 15. Moreover, both parties were equally disadvantaged by their inability to cross-examine Pérez: the government would have used this opportunity to impugn Pérez's recanting statements while defendant would have attempted the same for her initial statements. Finally, Magistrate Judge Harvey correctly concluded that the admission of Pérez's initial out-of-court statements was not prejudicial and did not violate defendant's attenuated due process rights because those statements have substantial indicia of reliability and are corroborated by the physical evidence in the case. See R&R at 15–16.

### C. Sentence

For the reasons explained above, the Court finds that defendant violated his supervised release when he committed aggravated battery of Pérez, and by traveling outside the supervising jurisdiction without permission (a violation that defendant conceded). The aggravated battery constitutes a more serious Class A violation and has a sentencing guideline of between 24 and 30 months for a releasee, like defendant, with a Criminal History Category I. USSG § 7B1.4(a)(2). Based on the depraved and premeditated nature of this battery, Magistrate Judge Harvey recommended revocation and a sentence of not less than thirty (30) months incarceration. See R&R at 27. The Court agrees with, and adopts, this recommendation.

## CONCLUSION

For the reasons set forth above, the Court rejects defendant's objections and adopts the Report and Recommendation in full. Accordingly, the Court will revoke defendant's supervised release and sentence defendant to a period of incarceration of thirty (30) months, followed by twenty-four (24) months of supervised release. A separate Judgment and Commitment will be forthcoming following a further hearing set for May 5, 2017.

/s/
JOHN D. BATES
United States District Judge

Dated: May 2, 2017